```
 1  LEONARDO M. RAPADAS
    United States Attorney
 2  MARIVIC P. DAVID
    Assistant U.S. Attorney
 3  Sirena Plaza Suite 500
    108 Hernan Cortez Avenue
 4  Hagatna, Guam 96910
    Telephone: (671) 472-7332
 5  Telecopier: (671) 472-7334

 6  Attorneys for United States of America
```

FILED
DISTRICT COURT OF GUAM
SEP 10 2005
MARY L.M. MORAN
CLERK OF COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, | MAGISTRATE CASE NO. 05-00046 |
| Plaintiff, | **COMPLAINT** |
| vs. | **ATTEMPT TO MANUFACTURE METHAMPHETAMINE HYDROCHLORIDE** [21 U.S.C. §§ 841(a)(1) and 846; and 18 U.S.C. § 2] (Count 1) |
| JOSEPH ANTHONY MESA, JEFFREY ANTHONY ESPINOSA, GINGER PEREZ HAMAMOTO, and SHARDAE ROXANNE U. LOVE, Defendants. | **POSSESSION WITH INTENT TO DISTRIBUTE METHAMPHETAMINE HYDROCHLORIDE** [21 U.S.C. § 841(a)(1); and 18 U.S.C. § 2] (Count 2) |

THE UNDERSIGNED COMPLAINANT CHARGES UPON INFORMATION AND BELIEF THAT:

### COUNT I - ATTEMPT TO MANUFACTURE METHAMPHETAMINE HYDROCHLORIDE

Between and on or about September 6, 2005, and continuing to on or about September 8, 2005, in the District of Guam, the defendants herein, JOSEPH ANTHONY MESA, JEFFREY ANTHONY ESPINOSA, GINGER PEREZ HAMAMOTO, and SHARDAE ROXANNE U. LOVE, knowingly and intentionally attempted to manufacture five (5) grams, gross weight, of methamphetamine hydrochloride, a schedule II controlled substance, in violation of Title 21, United States Code, §§ 841(a)(1) and 846, and Title 18, United States Code, § 2.

## COUNT II - POSSESSION WITH INTENT TO DISTRIBUTE METHAMPHETAMINE HYDROCHLORIDE

On or about September 8, 2005, in the District of Guam, the defendants herein, JOSEPH ANTHONY MESA, JEFFREY ANTHONY ESPINOSA, GINGER PEREZ HAMAMOTO, and SHARDAE ROXANNE U. LOVE, knowingly and intentionally possessed with intent to distribute five (5) grams, gross weight, of methamphetamine hydrochloride, a schedule II controlled substance, in violation of Title 21, United States Code, § 841(a)(1), and Title 18, United States Code, § 2.

COMPLAINANT FURTHER STATES:

I, DANNY CHO, being a Special Agent with the U.S. Drug Enforcement Administration and acting in my official capacity, set forth the following facts:

1. I have been a Special Agent with the U.S. Drug Enforcement Administration (DEA) since March 1999. I had been assigned from March 1999 to October 2003 to the Southern California Drug Task Force at the DEA Los Angeles Field Division. Since October 2003, I have been assigned to the DEA Guam Resident Office (GRO).

2. From my assignment, I have conducted and/or assisted in the conduct of more than 10 clandestine lab investigations and prepared search warrants which resulted in the seizures of clandestine labs, including some of the largest yet encountered by law enforcement. I have conducted interviews and surveillance of clandestine lab operators, chemical brokers, narcotic dealers, users and their associates, often times, monitoring their telephone conversations and engaging them in undercover conversation. During my interviews and interrogations of suspects, they taught me techniques used by methamphetamine traffickers to commit their crimes including methods taken to detect and avoid law enforcement.

3. I have developed official contacts with criminalists, chemical supply companies, chemists, toxic waste disposers, hazardous material's firefighters, environmental health specialists and other narcotics investigators working in the clandestine lab field and have discussed with all of them various aspects of clandestine lab investigations.

2

4. The information contained in this affidavit is based on information and oral and written reports of law enforcement officers in the course of their official duties.

5. On September 8, 2005, I received an anonymous telephone from an individual source of information ("SOI") who refused to disclose his/her identity but provided drug-related information regarding the manufacturing methamphetamine at Guam Reef Hotel, 1317 Pale San Vitores Road, Tumon, Guam. SOI stated that four (4) individuals named "Jess ESPINOSA, Joey MESA, Shardae LOVE and Ginger HAMAMOTO" are currently staying at an unknown room at the hotel manufacturing methamphetamine. I then asked SOI how he/she could be sure about the information. SOI replied that he/she knew LOVE and LOVE is a drug user.

6. I provided the information to Guam Police Department (GPD) Violent Street Crime Unit (VSCU) Task Force Officer (TFO) Norbert Sablan. When TFO Sablan was informed of the name LOVE, he recognized it immediately, and stated that LOVE was recently arrested by GPD in August, 2005 for unknown charges. TFO Sablan then printed out a booking photo of LOVE, fully identified as SHARDAE ROXANNE U. LOVE.

7. At approximately 4:00 p.m., I went to the hotel and was accompanied with members of VSCU. I showed the photo of LOVE to the hotel room reservations manager and the hotel security manager and asked if LOVE was currently staying at the hotel. The managers confirmed that LOVE was seen along with a couple of young males entering and exiting the hotel and that she was staying at Room 755. Approximately five (5) minutes later, I recognized LOVE standing by the front counter with two (2) plastic bags filled with heavy objects. I then observed LOVE walk towards and enter the lobby elevator.

8. Upon entering the elevator, I approached and asked LOVE if she could step outside the elevator to answer some questions. LOVE said yes and stepped outside of the elevator. I identified myself to LOVE, by showing my badge, that I was DEA investigator and told her that I received anonymous information about her engaging in manufacturing methamphetamine at the hotel. LOVE then became nervous and started to avoid my questions by demanding the identity

of the source of the anonymous information. I reiterated that I was at the hotel to verify if LOVE was not involved in manufacturing methamphetamine along with her male friends. I then asked LOVE if she will give enforcement personnel permission to check her hotel room to verify there is no operating methamphetamine laboratory. By this time, LOVE became angry and said she did not know where her friends were staying.

9. I asked LOVE what she was carrying in the plastic bags. She replied that she was carrying a can of gasoline (one (1) gallon of Coleman combustible fuel) for a kitchen stove for cooking. I then asked her if the room was equipped with the kitchen stove. She replied again that the gasoline was for the kitchen stove for cooking. I asked LOVE what was inside the other plastic bag. LOVE said water. Subsequent to the interview with LOVE, I spoke with the hotel reservations manager and verified that the room 755 was not equipped with the kitchen. The manager stated that even if the hotel rooms are equipped with kitchen stoves, they do not need combustible fuel for cooking. In addition, if customers are found with any type of flammable gasoline in the hotel rooms, they are subjected to be removed from the hotel. Based on my training, experience, knowledge of this investigation, and discussions with other law enforcement personnel, I know that individuals, who manufacture methamphetamine frequently use Coleman combustible fuel and distilled water as part of manufacturing methamphetamine.

10. During the course of the interview, LOVE changed her stories regarding the fuel. LOVE told me that the fuel was for cook-out today by the hotel swimming pool with her friends, and that she did not know the room her friends were staying at the hotel. I then asked the hotel security manager if there were barbecue grills located by the swimming pool. The hotel security manager said yes, but customers need to make a reservation in advance and the room occupants at room 755 did not make a reservation.

11. I further gathered information from the hotel security manager that occupants in room 755 have been staying at the hotel three (3) days and changed their room every day. Room 755 was registered under the name of Renee S. Munoz. Based on my training, experience, knowledge

4

of this investigation, and discussions with other law enforcement personnel, I know that individuals who manufacture methamphetamine frequently change places in order to minimize a strong methamphetamine manufacturing chemical odor in the room.

12. Based on the above mentioned information, a federal search warrant was obtained at 8:45 p.m. of the same date and was served to a male individual, later identified to be JOSEPH ANTHONY MESA, at Room 755, Guam Reef Hotel located at 1317 Pale San Vitores Road, Tumon on the same date. Also present in the room were JEFFREY ANTHONY ESPINOSA, GINGER PEREZ HAMAMOTO, and HAMAMOTO's six-month old baby girl. On the floor of the room near the balcony window were eleven (11) small straws with red stripes sealed on both ends, and each straw contained a crystalline substance. The eleven (11) straws and its contents weighed two (2) grams. A sample of said substance was field tested and tested presumptive positive for methamphetamine. A GPD radio scanner and an inoperative methamphetamine laboratory were also found inside the room. The room contained equipment and chemicals commonly used in the manufacturing of methamphetamine: heating devices such as an electric heating plate and a single burner portable gas stove; numerous flasks and other glassware; hoses or tubing material; 50 boxes of matchbooks, and each box contained 50 matchbooks; and various chemicals (acetone, denatured alcohol, iodine, airbrush thinner and red devil lye) were placed in different locations of the room. Quantities of Coleman combustible fuels and gallons of distilled water (consistent with the Coleman combustible fuel and a gallon of distilled water that LOVE was carrying into the hotel) were also found.

13. During a search incident to arrest, officers discovered a folded paper cup containing a clear ziploc bag further containing a crystalline substance inside a hidden pocket located in the front side of JOSEPH ANTHONY MESA's pants. The ziploc bag containing the substance weighed three (3) grams. A sample of said substance was field tested and tested presumptive positive for methamphetamine.

5

14. MESA, HAMAMOTO and ESPINOSA were transported to the DEA office for processing. LOVE was released that evening. During the post-arrest interview, HAMAMOTO stated that she was invited to the room by LOVE for the purpose of smoking crystal methamphetamine with LOVE. HAMAMOTO further stated that she noticed various types of chemicals laying around the room and the GPD police radio scanner monitoring the movements of police officers.

15. Based on the foregoing, I have probable cause to believe that JOSEPH ANTHONY MESA, JEFFREY ANTHONY ESPINOSA, GINGER PEREZ HAMAMOTO, and SHARDAE ROXANNE U. LOVE have committed the offenses of attempt to manufacture methamphetamine hydrochloride in violation of Title 21, United States Code, Sections 841(a)(1) and 846, and Title 18, United States Code, Section 2; and possession with intent to distribute methamphetamine hydrochloride in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

DATED this 10th day of September, 2005.

_____
DANNY CHO
Special Agent
U.S. Drug Enforcement Administration

SUBSCRIBED AND SWORN TO before me on this 10th day of September, 2005.

_____
JOAQUIN V.E. MANIBUSAN, JR.
Magistrate Judge
District Court of Guam

6