IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH ANTHONY MESA,<br>JEFFREY ANTHONY ESPINOSA, and<br>GINGER PEREZ HAMAMOTO,<br><br>Defendants. | CRIMINAL CASE NO. 05-00066<br><br>**REPORT & RECOMMENDATION**<br>re Defendant Mesa's Motion to Suppress<br>and Joinders Thereto |

This matter is before the Court on a Motion to Suppress Physical Evidence filed by defendant Joseph Mesa ("Mesa"), to which defendants Jeffrey Espinosa ("Espinosa") and Ginger Hamamoto ("Hamamoto") (collectively referred to as "the Defendants") have joined. Upon due consideration of the parties' argument and review of the testimony adduced at the evidentiary hearing,[1] the Court hereby issues the following Report & Recommendation.

**PROCEDURAL BACKGROUND**

On October 24, 2005, Mesa filed a motion to suppress the physical evidence obtained as a result of a search warrant, arguing that the warrant lacked probable cause and/or that service

---

[1] Although this Court heard days of testimony and evidence in relation to other motions to suppress stemming from this same investigation, the Court limits its factual findings and conclusions herein to the testimony and evidence presented during the January 25th hearing.

of the warrant was invalid. (Docket No. 61.) Hamamoto joined in said motion on the same date. (Docket No. 65.)

On November 16, 2005, District Judge Robert Clive Jones referred the motion and another motion to suppress filed by co-defendant Shardae Love[2] ("Love") to the below-signed judge for the issuance of a report & recommendation. (Docket No. 82.)

The Court held a hearing on the suppression motions on December 5, 2005. Espinosa orally joined in Mesa's motion at the start of the hearing. The Court and the parties then discussed whether the Defendants had standing to challenge the search of room 755. The Court took the matter under advisement and stated that it would issue its report and recommendation as to the standing issue before hearing argument on the merits of the suppression motion.

On December 20, 2005, the Court issued a Report & Recommendation, finding that the Defendants had standing to challenge the search of room 755. (Docket No. 111.) On January 12, 2006, District Judge Donald W. Molloy accepted the Court's Report & Recommendation. (Docket No. 123.)

On January 25, 2006, the Court heard testimony and further argument on Mesa's motion to suppress the physical evidence. Thereafter the Court took the matter under advisement.

## FINDINGS OF FACT[3]

Danny Cho ("Cho") is a criminal investigator with the Drug Enforcement Administration ("DEA") and has been so employed for approximately eight (8) years. On September 8, 2005, at approximately 1:30 p.m., Cho was at the DEA office when he received a telephone call from an individual who refused to disclose her identity. Cho did not recognize the caller's voice, but he stated that it sounded like a female's voice. The anonymous caller informed Cho that four (4) individuals were engaged in the manufacturing of methamphetamine at the Guam Reef Hotel. The caller identified the four individuals as "Jess Espinosa, Joey

---

[2] Defendant Love's motion to suppress was filed on October 18, 2005. (Docket No. 46.)

[3] To the extent that a finding of fact should be deemed a conclusion of law, or a conclusion of law deemed a finding of fact, it shall so be considered and incorporated.

Mesa, Ginger Hamamoto, and Shardae Love." Cho asked whether the caller knew what room number they were in, and the caller stated that she did not know. Cho then asked the anonymous caller how he could be sure that the information provided was reliable, and the caller responded that the information was reliable because she knew Love and that Love was a drug user.

Cho then passed the information to Norbert Sablan ("Sablan") who was with the Violent Street Crimes intelligence unit of the Guam Police Department ("GPD") and asked whether GPD had any information on the four individuals. Sablan later advised Cho that Love was arrested recently and that GPD had her booking photo. Cho testified that Sablan did not know what charges Love was arrested for because the record was not available at that time. Cho subsequently proceeded to the Guam Reef Hotel, arriving at about 4:00 p.m., where he met with Sablan and two (2) other officers. Sablan then provided Love's booking photo to Cho.[4]

At the hotel, Cho went to the front desk where he spoke with the hotel reservations manager. Cho showed Love's booking photo to the hotel reservations manager and asked whether she recognized the woman in the photograph and whether the woman pictured was staying at the hotel. The reservations manager recognized the woman in the photograph and asked the hotel security manager to join them at the front desk to corroborate this. The security manager recognized the woman in the photograph and stated that he had seen her in the lobby. Cho was advised that Love had been seen walking in and out of the hotel with a couple of males. The management staff also informed Cho that Love was presently staying in Room 755 and that the occupants of Room 755 had been staying at the hotel for the past three (3) days but had changed rooms each day. The management staff had no further information regarding any of the names provided by the anonymous caller.

After speaking with the hotel managers, Cho saw Love standing by the reservations desk. Cho approached her as she headed to the elevator in the hotel lobby. Cho then asked Love if she would mind stepping out of the elevator so that he could ask her some questions.

---

[4] The booking photo of Love was admitted as Exhibit 1.

Love agreed and exited the elevator. Cho then identified himself as a DEA investigator and explained that he was at the hotel to verify information that he had received that Love was cooking methamphetamine at the hotel. Love became angry and demanded Cho to disclose the source of the information.

Cho noticed that Love was carrying two plastic shopping bags, one in each hand, which appeared to contain heavy objects. Because the items in the shopping bags were large, Cho was able to see the labels on the items. Cho saw what appeared to be a metal container of combustible fuel. Cho asked Love what she was carrying in her bags, and she said gasoline and water. Cho asked Love if she would show him what was in her bags. She complied, and Cho saw that Love had combustible fuel in one bag and a gallon of distilled water in the other. Cho then inquired into Love's purpose of bringing the gasoline to the hotel room, and she replied that it was for cooking on the kitchen stove.

Cho left Love and went back to the front desk to verify the information he received from Love. Cho asked the hotel manager whether Room 755 was equipped with a stove, and he replied "no." Cho then returned to Love and said that he had just been advised that there was no stove in the room. Love then changed her story and told Cho that the fuel was for a barbecue by the hotel pool. Cho again left to verify Love's explanation with the hotel security manager, who stated that there were a limited number of barbecue grills by the pool, and thus hotel guests were required to make reservations in advance for their use. Furthermore, Cho was told that the occupants of Room 755 had no such reservations for the use of a grill.

Cho subsequently left the Guam Reef Hotel at approximately 5:00 p.m. to apply for a search warrant for Room 755. Cho went to the DEA office to prepare the search warrant application and the supporting affidavit, while the officers who had accompanied him to the hotel transported Love to GPD offices in Tiyan, where she was detained until a search warrant could be obtained.

When Cho finished drafting the necessary documents, he drove to the hotel where then visiting District Judge Otero was staying. Judge Otero reviewed the application and Cho's affidavit and issued a search warrant for Room 755 at approximately 8:45 that evening.

Armed with the warrant, Cho proceeded to a predetermined briefing site located at the parking lot across from the Okura Hotel. Upon his arrival, Cho provided a briefing to the other law enforcement personnel who would be assisting in the execution of the search warrant. Cho explained that a search warrant had been issued, he discussed the nature of their investigation, and stated that he believed there was possibly a methamphetamine laboratory in operation in the room. Before heading back to the Guam Reef Hotel, Cho asked Love if she would assist law enforcement personnel by knocking on the door of Room 755, and she agreed. Cho testified that he sought Love's assistance because the hotel was a public area and he wanted the execution to remain as low key as possible in order to minimize and avoid confrontation and other dangers normally attendant with an operating methamphetamine laboratory.

Cho and the others left the briefing site for the Guam Reef Hotel. Cho met briefly with the hotel security manager and advised him that Cho had obtained a search warrant for Room 755 and requested that he accompany them to the seventh floor, which he agreed to do. Cho, Love and the other officers then proceeded up to Room 755.

Cho and Love approached the door, which Cho described as being an "ordinary hotel door" with a peep hole in the center and having a lock that required a key card. Love stood directly in front of the door to Room 755, while Cho stood up against the wall to Love's left to avoid being seen through the peep hole. Other members of the entry team lined up behind Cho along the wall as well. From this position, Cho could hear what seemed like television sounds coming from Room 755. Love knocked on the door, there was a long pause, and the door was not opened. Love knocked again, and Cho heard what sounded like a person inside the room by the door possibly peering through the peep hole to see who was outside the door. Then, the door opened, and Cho saw that it was Hamamoto who opened the door.

The entry team then made their way into the room, announcing "police, police," "put your hands up," and "get down on the floor." Members of the entry team were not dressed in police uniforms but were wearing civilian clothing with police vests that identified them as law enforcement officials. Cho entered the room after the entry team and saw Espinosa and Mesa in the room. While the other officers were securing the room and its occupants, Cho conducted a

security sweep to see if any cooking activity was taking place, but Cho found none. Because Cho could smell a strong chemical odor in the room, he opened the balcony window to expel the air and neutralize the room. The Defendants were taken out of the room and placed in the hallway. When Cho was satisfied that the room had been ventilated of the chemical odor, the Defendants were brought back into the room, and Cho explained that a warrant had been issued authorizing law enforcement officers to search the room. A copy of the warrant was shown and provided to Mesa, as depicted in Exhibit 4. The officers then proceeded to search the room as authorized by the warrant. Subsequently thereafter, the Defendants were arrested.

## CONCLUSIONS OF LAW

The Defendants assert that suppression of all physical evidence is warranted where here there was a lack of probable cause to support the issuance of the warrant. Furthermore, the Defendants claim that problems in the execution of the warrant justify suppression. The Court will address each of these contentions in turn.

1. <u>Sufficiency of Probable Cause Determination to Issue Search Warrant</u>

It is a constitutional requirement that no warrant shall issue for a search except upon a showing of probable cause. As the Supreme Court stated in <u>Illinois v. Gates</u>, 462 U.S. 213 (1983), "[p]robable cause is a fluid concept – turning on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules." <u>Id.</u> at 232. Probable cause to search is established where "there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Id.</u> at 214. While ruling that an affidavit must provide a magistrate judge with a substantial basis for determining the existence of probable cause, the majority in <u>Gates</u> nevertheless ruled that this determination depends on a "common-sense decision whether, given all the circumstances set forth in the affidavit before him, there is a fair probability that contraband or evidence of a crime will be found in a particular place." <u>Id.</u>

Furthermore, "[i]n reviewing the validity of a search warrant, the Court is limited to the information and circumstances contained within the four corners of the underlying affidavit." <u>United States v. Stanert</u>, 762 F.2d 775, 778 (9th Cir. 1985). A judge's determination of probable

cause is accorded great deference. U.S. v. Leasure, 319 F.3d 1092, 1099 (9th Cir. 2003). "[T]he duty of a reviewing court is simply to ensure that the [judge] had a substantial basis for concluding that probable cause existed." Gates, 462 U.S. at 214.

While "an anonymous tip, without more, does not constitute probable cause," United States v. Mendonsa, 989 F.2d 366, 368 (9th Cir.1993), in this case the application for the search warrant contained an abundance of *additional* evidence which, when considered along with the anonymous tip, was sufficient to support a finding of probable cause to believe that evidence of methamphetamine manufacturing would be found in Room 755. In addition to the information received from the anonymous caller, Cho was able to ascertain that Love and two males were staying at the hotel and had been there for about three days. See Exhibit 2 at ¶¶7 & 11. Love's sighting at the hotel in the company of two males is important because the anonymous caller gave Cho the name of two male individuals. Additionally, the occupants of the room had switched rooms every day of their stay. Id. at ¶11. Based on Cho's training and experience, individuals who manufacture methamphetamine frequently change locations in order to minimize the chemical odor that results from the cooking process. Id. Furthermore, Cho personally observed Love in the hotel carrying bags containing combustible fuel and water. Id. at ¶¶7 & 9. Based on his experience and training, Cho stated that individuals who manufacture methamphetamine frequently use this type of fuel and distilled water as part of the manufacturing process. Id. at ¶9. The warrant was further based on the conflicting stories provided by Love about the use of the fuel. First she said it was for the kitchen stove in the room, then she changed her story by stating that the fuel was to be used for a barbecue. Id. at ¶¶9-10. Cho spoke with the hotel manager who advised him that there was no kitchen unit in Room 755 and that the occupants of said room had not reserved the use of any of the barbecue grills available that day. Id. Because of the policy in favor of encouraging officers to obtain warrants prior to conducting a search, courts have often found that the officer's expertise and experience will add substantial weight to inferences which might not withstand challenge if made by an ordinary citizen. United States v. Ortiz, 422 U.S. 891 (1975) ("officers are entitled to draw reasonable inferences from these facts in light of their knowledge in the area and their

1 prior experience with aliens and smugglers"). Because Cho's affidavit, when taken as a whole rather than an assessment of any one fact in isolation, establishes a fair probability that evidence of methamphetamine manufacturing would be found in Room 755, the Court finds that Judge Otero had a substantial basis for concluding that probable cause existed to justify the issuance of a search warrant for the room.

The Defendants, however, have also argued that Cho intentionally omitted material facts from his affidavit such that had he included said facts, Judge Otero likely would not have authorized the search of Room 755. See Franks v. Delaware, 438 U.S. 154 (1978). The defendant in Franks sought to challenge the truthfulness of factual statements made in an affidavit supporting a search warrant. The Supreme Court held that

> where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request. In the event that at that hearing the allegation of perjury or reckless disregard is established by the defendant by a preponderance of the evidence, and, with the affidavit's false material set to one side, the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided and the fruits of the search excluded to the same extent as if probable cause was lacking on the face of the affidavit.

Id. at 155-56.

Where a defendant alleges material omissions, as opposed to false statements, an evidentiary hearing is not required if the affidavit, supplemented with the omissions, would still provide a substantial basis for concluding that probable cause exists. Stanert, 762 F.2d at 782 (9th Cir. 1985). The omissions must have been either deliberately made or recklessly omitted in order to give rise to a Franks issue. United States v. McQuisten, 795 F.2d 858, 862 (9th Cir. 1986).

In the present case, the Defendants allege that Cho knew that Love's arrest by GPD in August 2005 was for a non-drug related offense, yet Cho deliberately failed to disclose this in his affidavit. While it appears peculiar that Sablan could provide Cho with Love's booking photo and yet not know what charge Love was arrested for, under the totality of the circumstances the inclusion of this information would still provide a substantial basis for

concluding that probable cause exists.

The Defendants also assert that Cho deliberately failed to advise Judge Otero that the hotel management staff could not provide Cho with any information to connect the Defendants to Room 755. The Defendants stress that the hotel staff could only verify that Love was seen entering and exiting the hotel, but the management staff had no further information regarding any of the names provided by the anonymous caller.

The Defendants are blurring the issues. The affidavit did not have to allege that these Defendants were connected to the illegal activities occurring in Room 755 or that they would even be found there. Rather, Cho's affidavit merely had to establish that there was probable cause to conclude that evidence of methamphetamine manufacturing would be found in Room 755, and this it did. The Court concludes that the information and circumstances contained within the four corners of Cho's affidavit, even if supplemented with the alleged omissions, would still provide a substantial basis for concluding that probable cause exists. There are no alleged omissions which are material to the determination of probable cause in this case. Accordingly, the Court recommends that the motion to suppress the physical evidence on this basis be denied.

2. <u>Alleged Violation of Knock and Announce Requirement</u>

The Defendants next assert that the officers failed to "knock-and-announce" their presence when they executed the warrant, in violation of 18 U.S.C. § 3109. Generally, an officer authorized by warrant to enter a private dwelling must comply with the statutory "knock and announce" requirements of 18 U.S.C. § 3109. This statute provides:

> The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant.

18 U.S.C. § 3109.

The Ninth Circuit has stated that

> [u]nder the terms of the knock-and-announce statute, federal officers executing a warrant for a search of a dwelling may not open the closed door of a dwelling until they have announced their authority and purpose and have been refused

admittance. Sabbath v. United States, 391 U.S. 585, 590, 88 S. Ct. 1755, 1758, 20 L.Ed.2d 828 (1968); United States v. McConney, 728 F.2d 1195, 1206 (9th Cir.) (*en banc*), *cert. denied,* 469 U.S. 824, 105 S. Ct. 101, 83 L.Ed.2d 46 (1984). The requirement that law enforcement officers give notice of their authority and purpose prior to forcing entry to execute a warrant serves three purposes: it protects citizens and law enforcement officers from violence; it protects individual privacy rights; and it protects against needless destruction of private property. United States v. Little, 753 F.2d 1420, 1435 (9th Cir.1984).

U.S. v. Contreras-Ceballos. 999 F.2d 432, 434-35 (9th Cir.1993). Recognizing that "a law enforcement officer's use of a ruse to gain admittance does not implicate Section 3109 because it entails no breaking," id. at 435, the Ninth Circuit found no violation when the officer in Contreras-Ceballos gained entry into the apartment by claiming to be a Federal Express agent when he executed the warrant. See also Dickey v. United States, 332 F.2d 773, 777-78 (9th Cir.), *cert. denied,* 379 U.S. 948 (1964) (upheld entry into room without a warrant when defendant opened the door after officer disguised his voice and pretended to be coconspirator), and Leahy v. United States, 272 F.2d 487, 489 (9th Cir.1959), *cert. granted,* 363 U.S. 810 (1960), and *cert. dismissed,* 364 U.S. 945 (1961) ("Misrepresentation of identity in order to gain admittance is not a breaking within the meaning of the statute.").

Additionally, in United States v. Michaud, 268 F.3d 728 (9th Cir. 2001), the Ninth Circuit ruled that the ruse used by an agent to persuade the defendant to open the door of her hotel room by posing as the hotel's assistant manager and stating that defendant's boyfriend was sick and needed her assistance, did not violate the defendant's Fourth Amendment rights, given the existence of a valid warrant for her arrest.

In this case, although Cho testified that it was not customary to use a civilian to gain entry into a place when executing a search warrant, the Defendants have failed to provide any authority to suggest that use of a civilian under such circumstances is prohibited. Based on the above cases, the Court concludes that the mere fact that the officers here used a ruse, namely Love's knocking on the door, to get the occupants of Room 755 to open the door does not violate the Fourth Amendment or Section 3109 since no breaking or forcible entry occurred. Once the door opened, the police announced their presence and stated their purpose. Accordingly, the Court recommends that the suppression motion be denied.

### 3. Alleged Failure to Provide Mesa with Copy of Search Warrant

Finally, Mesa[5] asserts that the evidence should be suppressed because the police failed to give him a copy of the search warrant, in violation of Rule 41(f) of the Federal Rules of Criminal Procedure. Contrary to Mesa's assertion, however, Cho testified that a copy of the warrant was provided to Mesa, as depicted in Exhibit 4, once the air in the room had been neutralized. The Court finds that although a copy of the warrant was not provided at the outset of the search, Cho nevertheless acted reasonably under the circumstances because of the need to first dissipate the chemical odor as quickly as possible.

Mesa further argues that although it appears in Exhibit 4 that he was photographed with a copy of the search warrant, the police never read the warrant to him nor did he have an opportunity to read it. The Court notes that Rule 41(f) merely requires that a copy of the warrant be given to the person from whom, or from whose premises, the property was taken. This was done as can be seen in Exhibit 4. However, even if the search warrant was somehow improperly served, a technical violation of Rule 41 requires suppression only if the defendant was prejudiced or there is evidence of deliberate disregard of the rule. United States v. Gantt, 194 F.3d 987, 994 (9th Cir. 1999); United States v. Negrete-Gonzales, 966 F.2d 1277. 1283 (9th Cir. 1992). Here, Mesa fails to allege or show how he was prejudiced by not being read or not being able to read the warrant prior to the search of the room. Nor does this Court find that the police officers deliberately disregarded the rule. The Court finds that the service of the warrant herein was valid and accordingly recommends denial of the motion to suppress.

///
///
///
///

---

[5] Although Espinosa and Hamamoto have joined in Mesa's motion, neither defendant filed a declaration which established the predicate factual finding (*i.e.*, that they did not receive a copy of the search warrant) required herein. Accordingly, the Court will only address Mesa's allegation that the police did not provide him with a copy of the search warrant at the outset of the search.

## RECOMMENDATION

Based on the foregoing, it is hereby recommended that the district judge adopt the findings of fact and conclusions of law as set forth above and enter an order denying Mesa's motion to suppress and the joinders thereto in their entirety.

Dated this 13th day of February 2006.

JOAQUIN V.E. MANIBUSAN, JR.
United States Magistrate Judge